JOHN H. STREETER, APPELLANT, *v.* CHARLES A. SHULTZ AND OTHERS, RESPONDENTS.

*Tenants in common — right of one tenant to purchase property on the foreclosure of a mortgage covering the interests of both — when an action to redeem will be barred by the acquiescence and laches of plaintiff — rights of a bona fide purchaser.*

In January, 1865, the plaintiff conveyed to Charles Shultz an undivided half of certain premises purchased by the plaintiff in 1864, subject to a mortgage of $7,500 given by the plaintiff to secure the purchase-money. The plaintiff made brick on the premises which were sold by Shultz in New York, but the parties were not partners Thereafter the mortgage was foreclosed, the premises being sold to one Christie, who bid on behalf of, and who assigned his bid to Shultz, to whom a deed of the premises was executed by the referee on June 10, 1875. There was no agreement that Shultz was to buy for the joint benefit of himself and the plaintiff, and the price paid was the full value of the premises at that time. In October, 1877, Shultz obtained a grant from the State of land under water in front of the premises, and built docks and buildings upon the premises at an expense of $25,000, and thereafter conveyed the same to his two sons for $30,000. On May 4, 1876, the plaintiff conveyed all his personal property on the premises to Charles Shultz. In September, 1886, he commenced this action to redeem from the foreclosure an undivided one-half of the premises upon the payment of one-half the amount due on the decree and interest, and to compel the defendant to account for waste and damage and for rents.

*Held,* that the fact that Shultz was a tenant in common with the plaintiff, having, however, no duties towards him other than such as necessarily arose from the co-tenancy, did not prevent him from purchasing the premises for his own benefit at the sale.

*Van Horne* v. *Fonda* (5 Johns. Ch., 407) explained and distinguished.

That the subsequent acts of the plaintiff, and his long acquiescence in the purchase by Shultz, would defeat his claim even if it had been originally good.

That as the two sons were *bona fide* purchasers and took title from Charles Shultz, whose title originated in the mortgage, they were not chargeable with notice of the deed from the plaintiff to Charles Shultz, as it was not in the line of their title.

APPEAL from a judgment dismissing the complaint, entered in Ulster county. upon the trial of this action by the court without a jury.

This action was brought to redeem from a foreclosure sale the undivided half of certain premises, by the payment of one-half the amount due on the decree and interest, and asks that thereupon

a decree be made that the defendants convey to the plaintiff such one-half, and, also, that they account for waste and damage and for rents.

In December, 1864, the plaintiff purchased the premises for $8,500, paying $1,000 by notes and giving a purchase-money mortgage for $7,500. In January, 1865, he conveyed an undivided half to Charles Shultz, "subject to a mortgage of $7,500." This purchase and conveyance were in pursuance of a verbal agreement between plaintiff and Shultz, that the land should be bought for their common benefit and that the manufacture of brick should be carried on upon it. They were not partners. But the plaintiff made brick on the premises and Shultz sold the brick in New York. They were tenants in common of the premises. The mortgagee foreclosed his mortgage, making plaintiff and wife and Shultz and others parties; and the premises were sold May 29, 1875, to Henry Christie for $7,000. Christie leased the premises that day to Hasbrouck till January 1, 1876. Christie assigned his bid to Shultz and the deed was executed to Shultz by the referee June 16, 1875 The bid of Christie was, in fact, for Shultz.

At the time of said sale Shultz held a mortgage executed by plaintiff and his wife on plaintiff's undivided part of the property, on which there was payable $3,000 and interest from May 1, 1873, its date; and plaintiff was also indebted to Shultz in the sum of $1,000, no part of either of which amounts has been paid. There was no arrangement or agreement between Shultz and plaintiff that Shultz was to buy for joint benefit. The price for which the property sold was its fair value at that time.

In October, 1877, Shultz obtained a grant from the State of the land under water in front of the premises; and he built docks and buildings on the property at an expense of $25,000. October 5, 1878, Shultz conveyed the property to his sons Charles A. and George S. for $30,000. They gave back a mortgage of $20,000 and have since occupied and improved the premises. On the 4th of May, 1876, the plaintiff conveyed all his personal property on the premises to Charles Shultz. The plaintiff never made any claim to the premises or to any interest therein from the date of the foreclosure till the commencement of this action in September, 1886.

*Charles A. Fowler,* for the appellant.

*E. S. Wood,* for the respondents.

LEARNED, P J :

The plaintiff and Shultz were not joint-tenants, but tenants in common subject to the purchase-money mortgage. Their estates in the land were separate and distinct. Each could sell his own share, and neither had any right in the other's share. Shultz did not assume any part of the mortgage, and was not personally liable thereon.

The plaintiff insists that because he and Shultz were tenants in common, Shultz could not purchase for his own benefit on the foreclosure sale; but that such purchase must be for the common benefit of both. This position rests, not on the decision, but on some language in the opinion, in *Van Horne* v. *Fonda* (5 Johns Ch., 407) It is important to see what was decided in that case. Douw Fonda and Henry Fonda were " joint and equal residuary devisees:" Henry conveyed in May, 1794, by deed, all his interest in certain lands to Douw This conveyance was held, as a matter of fact, to have been in trust, to facilitate the acquisition of a good title. Afterwards Douw purchased in his own name, from Moses Johnson, an outstanding title. The question, so far as the present case is concerned, was whether that purchase could be held to have been for his own benefit. In that connection the chancellor said : " I will not say, however, that one tenant in common may not, in any case, purchase in an outstanding title for his exclusive benefit." * * * " I have no doubt, therefore, that in a case like the present, and assuming what the evidence warrants us to assume, that the deed of May, 1794, was taken by the defendant (Douw) for trust purposes, that the purchase from Moses Johnson ought in equity to enure for the common benefit."

It is true that more than this is said by the chancellor, but the question always should be, what was decided And if we look at the facts, we find that the defendant had taken a deed from his co-tenant for trust purposes, and was so holding their common title when he bought in the outstanding title Thus we have the case of a trustee dealing in respect to trust property

It is further to be noticed that in the opinion the acts of Douw

Fonda are said to be those of a person "clothed with the office of an executor" in respect to the estate of Henry, and also that the parties are spoken of as joint tenants and having a joint interest. The will of the ancestor was made after chapter 12, Laws of 1786. But whether in that case the devise made a joint tenancy, or a tenancy in common is not clear. The distinction between the two is not considered. Of course the principle is familiar that one who is, in any sense, a trustee cannot purchase the trust property, or deal with it, for his own benefit. But the question in this present case is whether a mere tenant in common, having no duties towards his co-tenants other than such as necessarily arise from the co-tenancy, may not purchase for his own benefit at a sale under a mortgage which covers both estates. If there were two separate pieces of land each owned by one person and both covered by a mortgage; on a foreclosure either person might buy for his own benefit. The estates in co-tenancy are separate and distinct. What prevents each owner from acting for his own benefit, unless some further element of trust exists? The same policy of the law which (contrary to the old rule) construes estates as in common, if they are not expressly joint, gives each owner in common the right to act for himself, unless he has assumed some trust duty to his co-tenant.

No such duty existed in this case. The plaintiff had mortgaged his share to Shultz, and was indebted to him besides. The fore-closure was open, and both plaintiff and Shultz were parties. It would be a great injustice to Shultz to hold that he could not buy for his own account If he could not, then he would be compelled either to allow the property to be sacrificed, if there were no bidders, or with his own funds to buy for the benefit of the plaintiff as well as of himself The plaintiff then would only need to keep still, and thus to throw the whole risk of the purchase on Shultz. Thus an irresponsible person might prevent his responsible co-tenant from protecting himself. We are satisfied that this is not the doctrine decided in *Van Horne* v. *Fonda*, and that even the language of the opinion does not justify this view.

There is another respect in which this case differs widely from that In that there was a private purchase of an outstanding title. In this there is a public purchase, known to the plaintiff, not of an outstanding title, but under a mortgage executed by the plaintiff

himself, and the plaintiff's opportunity to purchase at the sale was as good as that of Shultz.

Further than this the subsequent acts of the plain   are an acquiesence in the purchase by Shultz. The transfer to him of the personal property, the acceptance of a position in the brick yard on the premises as foreman, the knowledge that Shultz was expending some $25,000 on the property, and the delay to assert any claim for eleven years — all these facts show a complete acquiescence. If the purchase by Shultz was, as plaintiff is said to have believed, for their common benefit, he should have asserted this promptly. Shultz, after the sale, held adversely to plaintiff, as plaintiff knew, and Shultz acknowledged no trust duties to him.

The plaintiff calls this action one to redeem a mortgage, and insists that twenty years is the statutory limitation. (Code of Civil Pro., § 379.) But the position of defendants is not merely that of a mortgagee in possession. The mortgage was validly foreclosed by the mortgagee against the plaintiff. The plaintiff's claim is, in fact, that the purchase by Shultz was, to the extent of one-half, for the benefit of plaintiff. This claim grows out of the co-tenancy, not out of the mortgage. Perhaps the true limitation is stated in section 382, subdivision 5. But it is unnecessary to decide that point. The plaintiff has permitted Shultz, as above stated, to make expenditures without objection; he has apparently waited until the property has increased in value. His long acquiescence would defeat his claim if it had been originally good. (*Kirk* v. *Hamilton*, 102 U. S., 68.)

There is still another objection to plaintiff's claim. Charles A. and George S. are *bona fide* purchasers; they take title from Charles Shultz. His title came from the referee's deed, and that title had its origin in the mortgage. In tracing their title, therefore, they did not necessarily see the conveyance made by plaintiff to Shultz; and they were not chargeable with notice of it, for it was not in the line of their title. They did not take title from Shultz as grantee from plaintiff of an undivided half, but from Shultz as grantee of the referee selling under the mortgage foreclosure.

The judgment should be affirmed, with costs.

BOCKES and LANDON, JJ., concurred.

Judgment affirmed, with costs.